1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL MOTORS LLC, a Delaware limited liability company,<br><br>                    Plaintiff,<br>          v.<br><br>SANTA MONICA GROUP, INC., et al.,<br><br>                    Defendants. | )  Case No. CV 10-04787 DMG (RCx)<br>)<br>)  **ORDER GRANTING PRELIMINARY**<br>)  **INJUNCTION**<br>)<br>)<br>)<br>)<br>)<br>) |

     This matter is before the Court on the Order to Show Cause why a preliminary injunction should not issue, which was set for hearing on July 9, 2010.  For the reasons set forth below, the preliminary injunction is GRANTED.

## I.
## BACKGROUND

     On June 28, 2010, Plaintiff filed a complaint in this Court seeking (1) declaratory judgment, (2) specific performance, and (3) preliminary and permanent injunction.  On June 29, 2010, Plaintiff filed an application for temporary restraining order ("TRO") and order to show cause why a preliminary injunction should not issue seeking to restrain Defendants Santa Monica Group, Inc. ("SMG"), Kayvan Naimi, Farinaz Naimi, Kamran

1   Naimi and Nilofar Naimi from continuing to prosecute arbitration proceedings pending
2   before the AAA and Arbitrator Kaplan, Case No. 72-532-00050-10 pursuant to the
3   Dealer Arbitration Act..  Defendants filed an opposition on July 1, 2010, and on the same
4   day, Plaintiff filed its reply.   According to Defendants' opposition, the arbitration is
5   scheduled to resume on July 13, 2010.  In its reply, GM urged the Court to grant the TRO
6   or, alternatively, schedule a prompt preliminary injunction hearing in advance of the July
7   13 hearing date set by the Arbitrator.  On July 2, 2010, in light of the resumption date for
8   the arbitration and Plaintiff's alternative request for a prompt hearing on its request for
9   preliminary injunction, this Court, rather than ruling on the TRO application, ordered
10  Defendants to appear on July 9, 2010 to show cause why a preliminary injunction should
11  not issue.

## II.

## LEGAL STANDARD GOVERNING PRELIMINARY INJUNCTIONS

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions.   The purpose of such injunctions is to preserve the rights and relative positions of the parties, *i.e.*, the *status quo*, until a final judgment issues.  *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)).  In light of this purpose and because the factual record under consideration at the preliminary injunction stage may differ materially from the fully developed factual record, preliminary injunctions frequently provide little guidance as to the appropriate disposition on the merits.  *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 876-77 (9th Cir. 2009); *see also Brown v. Chote*, 411 U.S. 452, 456, 93 S.Ct. 1732, 36 L.Ed.2d 420 (1973).

Plaintiffs seeking a preliminary injunction in a case involving the public interest must show that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.  *Dominguez v. Schwarzenegger*,

596 F.3d 1087, 1092 (9th Cir. 2010), *petition for cert. filed*, 78 USLW 3581 (Mar. 24, 2010); *see also Winter v. Natural Res. Def. Council, Inc.*, __ U.S. __, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008).

## III.

## <u>DISCUSSION</u>

Plaintiff seeks a preliminary injunction restraining and enjoining Defendant SMG, based on a valid and binding written settlement agreement, from continuing to prosecute arbitration proceedings now pending before the American Arbitration Association ("AAA") as AAA Case No. 72-532-0050-10 ("AAA Arbitration") pursuant to section 747, Consolidated Appropriations Act, 2010, Pub. Law 11-117, 123 Stat. 3034 (2009) (the "Dealer Arbitration Act").

## A.    <u>Plaintiff Has Demonstrated A Likelihood Of Success On The Merits</u>

All parties agree that pursuant to a request for arbitration by SMG, the parties herein were involved in arbitration proceedings before Arbitrator Kaplan on June 8 and 9, 2010.  In arbitration, Defendants brought their claims for reinstatement of their franchise thereby challenging SMG's "Wind-Down Agreement,"[1] under which non-retained dealers like SMG were permitted to continue certain dealership operations until October 31, 2010, at which time they were required to terminate their Dealer Agreement.  During the course of these proceedings, the parties engaged in settlement negotiations.  All parties executed the Settlement and Deferred Termination Agreement and Release, which states that "[t]his Settlement and Deferred Termination Agreement and Release ('Agreement') is entered into as of June 9, 2010 by and between General Motors LLC ('GM'), on the one hand, and Santa Monica Group, Inc. ('SMG') and SMG's owners Kayvan Naimi, Farinaz Naimi, Kamran Naimi and Nilofar Naimi ('Owners'), on the

---

[1]    GM's predecessor, General Motors Corporation n/k/a Motors Liquidation Company ("Old GM"), as part of its bankruptcy proceedings, entered into these "Wind-Down Agreements" with dealerships Old GM chose not to retain.  These dealerships were given the right to file arbitration claims under the Dealer Arbitration Act.

other hand, collectively the 'Parties.'  Among its terms, the Agreement provides that "[u]pon execution and delivery of this Agreement (a) SMG shall immediately request that the American Arbitration Association dismiss the Arbitration . . . ."

Although Defendants concede that they executed the Agreement, their sole contention on the merits is that the settlement contemplated the execution and/or filing of other documents, which Defendants have not done.  However, as explained by Plaintiff in its reply brief, "[w]hile it is true that the Settlement Agreement contemplates preparation and execution of additional documents, *the Settlement Agreement obligates the parties, including defendants, to prepare and execute those documents . . . .*"  (GM Reply, ¶ 2 [Doc. #1])

As such, Plaintiff has established that it has a binding written settlement agreement under which SMG is obligated to request that the American Arbitration Association dismiss the Arbitration.[2]  Evidence presented by defendants that they have not executed subsequent documents or performed subsequent acts does not negate the formation of a binding contract.  Instead, it is evidence of defendants' breach thereof.

---

[2]      In their opposition to the preliminary injunction, Defendants, referring to the Settlement and Deferred Termination Agreement and Release as the "initial settlement agreement," concede that they executed the agreement on June 18, 2010.  It is unclear why they make a point of saying that they notified counsel for GM "(prior to the execution by GM of the initial settlement agreement) that, upon reviewing the terms of what the initial settlement agreement required, they could not execute or authorize the execution of the remainder of the documents necessary to complete the settlement terms." [Doc. #15.]  Defendants do not argue that this prior notification to GM's counsel was a revocation of their offer prior to GM's execution in acceptance thereof.  Defendants do not controvert Plaintiff's evidence that prior to Defendants' execution of the "initial settlement agreement," Defendants were informed by GM's counsel that the draft which Defendants subsequently signed was acceptable to GM.  As such, Defendants' execution and delivery of the "initial settlement agreement" constituted acceptance of GM's offer.  "Parties may engage in preliminary negotiations, oral or written, in order to reach an agreement.  These negotiations ordinarily result in a binding contract when all of the terms are definitely understood, even though the parties intended that a formal writing embodying these terms was to be executed later."  1 B.E. Witkin, *Summary of California Law* § 133 (10th ed. 2005) (Citations omitted).

**B.    Plagin Is Likely To Suffer Irreparable Harm In The Absence Of Preliminary Relief**

Issuance of a preliminary injunction will maintain the *status quo*.  In the absence of a preliminary injunction, the arbitration proceedings will resume on July 13, 2010, which would completely deprive GM of an important benefit of its bargain.  Moreover, absent a preliminary injunction, GM would face the risk of an adverse arbitration award which, during the pendency of this action, could prevent GM from establishing a planned Chevrolet dealership in Culver City – a harm for which legal compensation is not easily ascertainable.

Consequently, Plaintiff has demonstrated a likelihood of irreparable harm unless a preliminary injunction is issued.

**C.    The Balance Of Equities Tips In Plaintiff's Favor**

In assessing whether a plaintiff has met its burden of establishing that the balance of equities tips in its favor, the district court has a duty to balance the interests of all parties and weigh the damage to each.  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009).

As stated above, a preliminary injunction will maintain the *status quo*, in the absence of which Plaintiff is likely to suffer irreparable harm.  On the other hand, if a preliminary injunction issues, Defendants will lose its opportunity to reopen arbitration proceedings.  This potential harm Defendants face is lessened because they do not controvert the fact that they voluntarily entered into the Agreement promising that "[u]pon execution and delivery of this Agreement (a) SMG shall immediately request that the American Arbitration Association dismiss the Arbitration . . . ."  (Settlement Agreement, ¶ 2.1)

Accordingly, the Court finds that the balance of equities tips in favor of Plaintiff.

**D.    An Injunction Is In The Public Interest**

When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis

rather than one that favors granting or denying the preliminary injunction.  *Stormans*, 586 F.3d at 1138-39.  If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction.  *Id*. at 1139.  In this case, the public interest is served by the enforcement of a valid and binding contract.

Plaintiff has demonstrated that (1) there is a likelihood of success on the merits; (2) there is a likelihood of irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.  Consequently, the Court grants Plaintiff's Motion for Preliminary Injunction.

**E.   <u>Posting of A Bond</u>**

Rule 65(c) permits a court to grant preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Notwithstanding the seemingly mandatory language, "Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*."  *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks omitted).  A district court may dispense with the filing of a bond if it concludes that there is no realistic likelihood of harm to the defendant from the injunction.  *Id*.  The burden of establishing the amount of bond necessary to secure against the wrongful issuance of an injunction rests with the defendant.  *Philips Elecs. N. Am. Corp. v. Hope*, 631 F. Supp. 2d 705, 724 n.14 (M.D.N.C. 2009) (citing *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996).

Here, Defendants identify no costs or damages that they would sustain as a result of an injunction, except for their attorneys' fees and costs, which Defendants estimate to be approximately $50,000.   The Court therefore orders that Plaintiff post a security bond in connection with the injunction in the amount of $50,000.

//

//

//

## IV.

## __CONCLUSION__

In light of the foregoing, the Court GRANTS a Preliminary Injunction as follows: Defendants Santa Monica Group, Inc., Kayvan Naimi, Farinaz Naimi, Kamran Naimi and Nilofar Naimi, their officers, agents, servants, employees, attorneys and all those in active concert or participation with Defendants are hereby restrained and enjoined, pending trial on the merits herein, from continuing to prosecute arbitration proceedings now pending before the AAA and Arbitrator Kaplan, Case No. 72-532-00050-10, pursuant to the Dealer Arbitration Act.

Defendant shall post a bond in the amount of $50,000.

IT IS SO ORDERED.

DATED:      July 9, 2010

_____
                DOLLY M. GEE
      UNITED STATES DISTRICT JUDGE